UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| WANDA ELLEN BENNETT, *Individually and as Representative of the Estate of* Brian Keith Bennett, and MICHAEL KEITH BENNETT, *Individually and as Representative of the Estate of* Brian Keith Bennett, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | No. 6:24-CV-31-REW-HAI <br><br> OPINION & ORDER |

\*\*\* \*\*\* \*\*\* \*\*\*

Wanda Ellen Bennett and Michael Keith Bennett, both individually and in their capacities as representative(s) of Brian Keith Bennett's estate (collectively, "Plaintiffs"), allege that the United States is liable for money damages under the Federal Tort Claims Act ("FTCA"). *See* DE 37 ¶ 3, at 2. Presently, the United States moves to dismiss this action in its entirety. *See* DE 41. Generally, it argues that dismissal is warranted under Federal Rule of Civil Procedure 4(m) given Plaintiffs' failure to timely effect service of process. *See id.* at 2–4. More specifically, it argues under Federal Rule of Civil Procedure 12(b)(1) and (6) that: (1) Counts II, III, and V should be dismissed on account of the discretionary-function exception to the FTCA, *see id.* at 6–20; (2) Count IV should be dismissed because Kentucky law does not permit Plaintiffs to recover on their loss of consortium claims, *see id.* at 24–25; and (3) Count V should be dismissed due to the fact that Plaintiffs did not raise that claim before the Bureau of Prisons ("BOP") prior to petitioning the Court, *see id.* at 20–24.

Plaintiffs then filed a response in opposition to the motion. *See* DE 44. In that filing, Plaintiffs attempted to contest some of the United States's arguments, while also raising additional substantive points. *See generally id.* The United States filed a timely reply, both reiterating its previous contentions and suggesting that Plaintiffs' failure to adequately respond to its arguments constitutes waiver. *See* DE 46 at 2–3. Ultimately, the Court, in its discretion, determines that Rule 4(m) does not mandate dismissal of the action. However, the United States's specific arguments warrant dismissal of select counts. Accordingly, the Court GRANTS DE 41, in part.

## I. BACKGROUND

While incarcerated at USP McCreary in Pine Knot, Kentucky, Brian Keith Bennett was tragically beaten to death by another inmate. *See* DE 37 ¶¶ 43–46, at 11–12. About two years after his death, Plaintiffs filed an administrative claim for relief, timely under the FTCA. *See id.* ¶ 1, at 1–2. The BOP rejected that claim, *see id.* ¶ 2, at 2, and Plaintiffs initiated the present action on February 29, 2024, *see generally* DE 1. In the original Complaint, Plaintiffs alleged that the United States was liable for damages due to its "gross negligence, failure to properly train, and medical malpractice . . . resulting in untreated injury and [Brian Bennett's] death." *Id.* ¶ 3, at 2. However, Plaintiffs only specifically pleaded a negligence claim arising out of the United States's failure "to hire competent operators, administrators, employees, agents[,] and staff in order to meet its standards of quality of care of its inmates," *see id.* ¶¶ 44–54, at 11–13, and parental/filial loss of consortium claims, *see id.* ¶¶ 55–61, at 13–14.

About six months after filing the Complaint, Plaintiffs moved for additional time to serve the United States. *See* DE 19. On referral, United States Magistrate Judge Hanly A. Ingram recommended that the Court deny the motion, noting that Plaintiffs' deadline for service had long passed, and that Plaintiffs' attorney—James G. Noll—had forged intervening summonses. *See*

2

DE 25 at 5–11. Noll objected to Judge Ingram's recommended disposition, *see* DE 26, as did Wanda Ellen Bennett, who asserted across two filings that Noll was no longer her attorney and that he had abandoned her and had been untruthful to both her and the Court, *see* DE 27; DE 28.

When addressing these objections, the Court remarked that Judge Ingram "plainly got the analysis correct on the law and facts." DE 29 at 2. However, it also noted that Noll's misconduct was so flagrant and atypical that it could, at least potentially, amount to an extraordinary circumstance warranting an extension of Plaintiffs' deadline for service. *See id.* at 3–5. For that reason, the Court removed Noll, provided Plaintiffs with an opportunity to secure new counsel, properly effected service, and preserved the United States's ability to raise any applicable defenses in a later motion. *See id.* at 6–7.

Soon after, attorney John L. Caudill entered an appearance as Plaintiffs' counsel, *see* DE 33, and filed an Amended Complaint. *See* DE 37. While Plaintiffs raise similar claims, they now specifically allege across five counts that the United States: (1) was negligent in failing to provide Brian Bennett with adequate medical care for his (twice) broken arm, which prevented him from defending himself against the attack, *see id.* ¶¶ 76–85, at 24–26; (2) was negligent in transferring Brian Bennett to USP McCreary, a maximum-security prison, when his security score only warranted medium security, *see id.* ¶¶ 86–96, at 26–27; (3) was negligent in releasing Brian Bennett from protective administrative detention in USP McCreary's special housing unit and into general population due to risk of gang violence, *see id.* ¶¶ 97–112, at 27–30; (4) is liable for both Wanda Ellen Bennett's (mother) and Michael Keith Bennett's (adult son) loss of consortium, *see id.* ¶¶ 113–119, at 30–31; and (5) was negligent in failing to properly train and supervise the BOP staff members that, among other lapses, inadvertently allowed Brian Bennett's confidential

3

personnel files to fall into the hands of other inmates, which may have caused his death, *see id.* ¶¶ 120–124, at 31–32.

Presently, the United States moves to dismiss Plaintiffs' claims in their entirety. *See* DE 41. First, it argues that Plaintiffs failed to effect timely service of process, and as a result, their claims should be dismissed under Rule 4(m). *See id.* at 2–4. Second, it contends that Counts II, III, and V all attempt to hold the United States liable for discretionary judgments or choices based on considerations of public policy, and thus, should be dismissed under Rule 12(b)(1) on account of the FTCA's discretionary-function exception. *See id.* at 6–20. Third, it notes that Kentucky law does not permit a parent to recover on a loss of consortium claim for her adult child's death or an adult child to recover on a loss of consortium claim for his parent's death, and because FTCA liability is coterminous with Kentucky tort liability, Count IV should be dismissed pursuant to Rule 12(b)(6). *See id.* at 24–25. And fourth, it asserts that Plaintiffs did not adequately state their claim or exhaust their administrative remedies with respect to Count V, making dismissal proper under Rule 12(b)(6). *See id.* at 20–24.

Plaintiffs filed a response in opposition to the United States's motion. *See* DE 44. While their scattered filing engages with the United States's contentions to at least some extent, it fails to clearly confront many of its claims or apply any applicable legal frameworks. *See generally id.* In its reply, the United States argues that Plaintiffs' lacking response is an effective waiver and further notes that the new facts they raise in their response do nothing to alter the deficiencies of their Amended Complaint or their failure to effect timely service. *See* DE 46 at 2, 10–14. The matter is ripe for the Court's decision.

## II.   LEGAL STANDARD

### A. Federal Rule of Civil Procedure 4(m)

When a defendant is not served within 90 days of the filing of a complaint, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  FED. R. CIV. P. 4(m). However, this general rule is subject to an important caveat: "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.*  Relevant to the present matter, a litigant seeking to extend the service deadline *after* the deadline has already lapsed must show both "good cause" and that their "failure to act was the result of excusable neglect." *Turner v. City of Taylor*, 412 F.3d 629, 650 (6th Cir. 2005) (citing FED. R. CIV. P. 6(b)). The excusable neglect standard is "consistently . . . held to be strict, and can be met only in extraordinary cases." *Id.* (quoting *Marsh v. Richardson*, 873 F.2d 129, 130 (6th Cir. 1989)).

In general, clients are "held accountable for the acts and omissions of their attorneys." *Howard v. Nationwide Prop. & Cas. Ins.*, 306 F. App'x 265, 267–68 (6th Cir. 2009) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 113 S. Ct. 1489, 1499 (1993)).  As a result, simple "attorney inadvertence generally does not constitute excusable neglect." *Jackson v. Chandler*, 463 F. App'x 511, 513 (6th Cir. 2012) (citing *Pioneer*, 113 S. Ct. at 1496–97, 1499; *McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 594–95 (6th Cir. 2002)).  But courts have also emphasized that "excusable neglect is a 'somewhat elastic concept' that is 'at bottom an equitable one, taking account of all relevant circumstances.'" *Century Indem. Co. v. Begley Co.*, 323 F.R.D. 237, 241 (E.D. Ky. 2018) (quoting *Pioneer*, 113 S. Ct. at 1496).

Relying on that principle, courts have found excusable neglect—albeit, in the slightly distinct Rule 60(b)(6) and equitable tolling contexts—in instances where an attorney's

5

extraordinary act of gross negligence prevented timely filing and prejudiced the litigants. *See, e.g.*, *Clark v. Fifth Third Mortg. Co.*, No. 2:15-CV-11169, 2016 WL 5508852, at *4 (E.D. Mich. Sept. 28, 2016) (citing *Fuller v. Quire*, 916 F.2d 358, 361 (6th Cir. 1990)) ("The Court recognizes that in certain circumstances an attorney's 'gross negligence' may provide a basis for relief under Rule 60(b)(6)."); *Maples v. Thomas*, 132 S. Ct. 912, 924–28 (2012) (finding attorney abandonment constituted sufficient cause to excuse petitioner's procedural default on his habeas claim).

### B. Federal Rule of Civil Procedure 12(b)(1)

A party may, by motion, seek dismissal of an action for "lack of subject-matter jurisdiction." FED. R. CIV. P. 12(b)(1). Although an invocation of sovereign immunity is distinct from a challenge to subject-matter jurisdiction, the Sixth Circuit has recognized that sovereign immunity is best raised "as a threshold defense, usually by way of a motion to dismiss under Rule 12(b)(1)." *Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 476 (6th Cir. 2006). Generally, the United States holds absolute immunity from suit. *See Dolan v. U.S. Postal Serv.*, 126 S. Ct. 1252, 1255–56 (2006). However, the United States may waive its sovereign immunity through specific legislation, and it has done so with the FTCA. *See Ali v. Fed. Bureau of Prisons*, 128 S. Ct. 831, 835 (2008).

The FTCA allows litigants to sue the United States for tort claims, stating that "[t]he United States shall be liable . . . in the same manner, and to the same extent as a private individual under like circumstances." Federal Tort Claims Act, Pub. L. No. 79–601, § 410, 60 Stat. 812, 844 (1946) (codified as amended at 28 U.S.C. § 2674). But the FTCA further specifies that the United States shall remain immune from liability in instances where the claim is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . , whether or not the discretion involved be abused." *Id.* § 421(a), 60 Stat. at 845 (codified as amended at 28

6

U.S.C. § 2680(a)).  This "discretionary-function exception" consists of a two-step inquiry, applying when:  (1) "the challenged action 'involv[es] an element of judgment or choice'"; and (2) "the judgment involved is 'of the kind that the . . . exception was designed to shield,' i.e., 'governmental actions and decisions based on considerations of public policy.'"  *Abbott v. United States*, 78 F.4th 887, 894 (6th Cir. 2023) (quoting *United States v. Gaubert*, 111 S. Ct. 1267, 1273–74 (1991)).  Importantly, the second part of this inquiry examines "whether the challenged actions are 'susceptible to policy analysis,' not whether they were the result of a policy analysis."  *L.C. v. United States*, 83 F.4th 534, 543 (6th Cir. 2023) (quoting *Rosebush v. United States*, 119 F.3d 438, 444 (6th Cir. 1997)).  The pertinent decision or judgment "need only have been theoretically susceptible to policy analysis."  *Jude v. Comm'r of Soc. Sec.*, 908 F.3d 152, 159 (6th Cir. 2018) (citing *A.O. Smith Corp. v. United States*, 774 F.3d 359, 370 (6th Cir. 2014); *Myers v. United States*, 17 F.3d 890, 895 (6th Cir. 1994)).

Two additional points on the discretionary-function inquiry warrant emphasis.  First, the Court must "focus[] on 'the nature of the conduct, rather than the status of the actor'"—that is, the Court's analysis will not change based on the particular government actor whose decision or judgment is being evaluated.  *Abbott*, 78 F.4th at 900 (quoting *Mynatt v. United States*, 45 F.4th 889, 895 (6th Cir. 2022)); *see also Snyder v. United States*, 590 F. App'x 505, 509 (6th Cir. 2014) (citing *Kohl v. United States*, 699 F.3d 935, 940 (6th Cir. 2012)).  Second, if the Court determines that the first step of the inquiry is met, it should afford a "strong presumption" that the second step will also be met.  *Jude*, 908 F.3d at 159; *see also Gaubert*, 111 S. Ct. at 1274.

### C.  Federal Rule of Civil Procedure 12(b)(6)

A party may also move to dismiss an action for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6); *see also id.* 8(a)(2) ("A pleading that states a claim for

7

relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). When evaluating a Rule 12(b)(6) motion, the Court must "accept all the [non-moving party's] factual allegations as true and construe the [pleading] in the light most favorable to the [non-moving party]." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005).

In order "[t]o survive a motion to dismiss, a [pleading] must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). If the non-moving party's pleading does not do so, or if the non-moving party is facially barred from recovering on their claims as a matter of law, then dismissal is warranted. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 127 S. Ct. at 1969). Importantly, while the non-moving party's pleading need not include detailed factual allegations, it must include "more than labels and conclusions." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487–88 (6th Cir. 2014) (quoting *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012)). And although the pleading's factual allegations should be assumed true, they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *Bredesen*, 500 F.3d at 527 (quoting *Twombly*, 127 S. Ct. at 1965).

### III.   ANALYSIS

#### A. The United States's Rule 4(m) Argument Is Denied

Plaintiffs failed to effect service of process within 90 days of filing their initial Complaint on February 29, 2024. *See* DE 1; DE 19. In fact, the United States was not served until November 25, 2024, when the Court itself interceded and effected service. *See* DE 29 at 6–7. However, as to the United States's Rule 4(m) argument, the Court still denies the motion. Neither

8

side does much substantive lifting in their arguments, and both largely incorporate by reference previous case steps. *See generally* DE 41; DE 44; DE 46. As a result, the Court primarily relies on its prior analysis, *see* DE 29, and the factorial assessment called for in *United States v. Oakland Physicians Med. Ctr., LLC*, 44 F.4th 565, 568 (6th Cir. 2022).

The Court already limned its equitable concerns. *See* DE 29 at 4–5. Now, with the United States served, the Court sees little prejudice to it from Rule 4(m) avoidance, but fatal prejudice to Plaintiffs—particularly given that the applicable statute of limitations has run on Plaintiffs' claims. *See* 28 U.S.C. § 2401(b) ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years . . . or unless action is begun within six months after the date of mailing . . . of notice of final denial of the claim by the agency to which it was presented."). Accordingly, refiling would prove impossible absent equitable tolling. *See Wershe v. City of Detroit*, 112 F.4th 357, 364–66 (6th Cir. 2024) (discussing equitable tolling and what the plaintiff was required to show in order to bring his untimely FTCA claim). Although the balance of this Opinion pares the case down only to the medical negligence allegations, *see* DE 37 ¶¶ 76–85, at 24–26, which themselves will face a challenging course, the Court will not dismiss the present action via Rule 4(m).

The merits deserve breath, and given Noll's intolerable conduct, the functional *pro se* values introduced by Noll's abandonment, and the temporal impact of dismissal, the Court will allow the case past the threshold implemented by Rule 4(m). Certainly, the delay was significant. But the prejudice weighing, the Government's sentience of the Bunch-King assaultive events and the swirling allegations, the unique severity of Noll's behavior, and the equities detailed in the Court's prior ruling, all convince the Court—in its discretion—to excuse the service timing. The Government's effort to assign culpability to Wanda Bennett is not, in this application, persuasive.

9

Further, relief tracks the multi-factor assessment required by *Oakland Physicians*, 44 F.4th at 568, and accounts for the expressed advisory committee values, *see* Fed. R. Civ. P. 4(m) advisory committee's note to 1993 amendments (referencing, e.g., limitations effect as justifying relief as well as noting consideration of *pro se* litigant protection from mechanical confusion and possible dynamics of government service hurdles).

## B. The Underlying Merits of the Motion Yield Dismissal of Counts II–V

Despite the previous analysis, the Court finds dismissal warranted for the majority of Plaintiffs' claims on account of the Amended Complaint's numerous merits-based deficiencies. *See* DE 41. As such, and pursuant to Rule 12(b)(1) and (6), the Court dismisses Count II, Count III, Count IV, and Count V, with prejudice.[1]

### 1. Discretionary-Function Exception (Counts II, III, and V)

The United States contends that Plaintiffs are barred from recovering under any of Count II, Count III, or Count V, as the claims contained therein are based on decisions and judgments that fall within the discretionary-function exception to the FTCA. *See* DE 41 at 6–20. The Court agrees with each of the United States's arguments and finds that the discretionary nature of the challenged actions forecloses the possibility of FTCA liability. As such, Plaintiffs' claims contained in Count II, Count III, and Count V are barred in light of the United States's failure to

---

[1] While Plaintiffs respond to *some* of the United States's merits-based arguments, they use much of their response to raise novel substantive arguments. *See* DE 44. For instance, Plaintiffs assert for the first time in their response that BOP staff members were negligent for abandoning their posts at the time of Brian Bennett's murder. *See id.* at 1–2. Needless to say, the Court will not consider Plaintiffs' novel arguments in deciding the motion to dismiss. *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) ("[I]t is black-letter law that, with few irrelevant exceptions, a court evaluating a motion for judgment on the pleadings (or a motion to dismiss) must focus only on the allegations in the pleadings. . . . This rule applies just as much when the plaintiff attaches evidence to its opposition as when . . . the defendant attaches evidence to its motion."). Nor will it consider their attempts at securing jurisdictional discovery given that, as demonstrated below and on this record, they have failed to "at a minimum, 'offer a[] factual basis for [their] allegations' and give the district court 'a reasonable basis to expect that . . . discovery would reveal' evidence that supports the claim." *C.H. ex rel. Shields v. United States*, 818 F. App'x 481, 484 (6th Cir. 2020) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)).

waive sovereign immunity, and dismissal with prejudice is warranted on all three of these counts pursuant to Rule 12(b)(1).

*i. Placement in USP McCreary (Count II)*

The United States first argues that the discretionary-function exception forecloses liability for the BOP's decision to place Brian Bennett in USP McCreary—a maximum-security prison—and as a result, the Court should dismiss Count II with prejudice. *See* DE 37 ¶¶ 86–96, at 26–27. At the first step of the discretionary-function inquiry, it is clear that the BOP retains "an element of judgment or choice" with respect to inmate housing assignments. *Abbott*, 78 F.4th at 894 (quoting *Gaubert*, 111 S. Ct. at 1273–74). And while Plaintiffs contend that the BOP erred by placing Brian Bennett in a maximum-security facility because his security score only warranted medium security, they have not identified any binding inmate housing directive that "specifically prescribe[s] a course of action and leaves the[ BOP's] employee[s] no rightful option but to adhere to the directive." *Am. Reliable Ins. v. United States*, 106 F.4th 498, 505 (6th Cir. 2024) (quoting *A.O. Smith Corp.*, 774 F.3d at 364–65).

Although Plaintiffs reference a number of statutes, regulations, and program statements in the Amended Complaint, they do so without elaboration or explanation. *See* DE 37 ¶¶ 68–75, at 19–24. To be clear, that alone could be grounds for dismissal. *See, e.g.*, *Bannister v. Pearce*, No. 22-CV-91, 2025 WL 394949, at *7 (E.D. Ky. Feb. 4, 2025) ("At the outset, it is worth noting that Plaintiff has not brought this Court's attention to any 'federal statute, regulation, or policy which specifically prescribes a course of action' for hiring, training, or supervising BOP employees. . . . This absence is fatal . . . ." (quoting *Mynatt*, 45 F.4th at 896)). However, the Court assumes that Plaintiffs cite at least some of these authorities—specifically, BOP Program

11

Statement 5100.08—for the proposition that the BOP does not retain discretion regarding inmate housing assignments. But that is an inaccurate statement of law.

BOP Program Statement 5100.08 *does* provide a method for calculating an inmate's security risk and determining his proper facility placement, but it *does not* bind the BOP or dictate a placement conclusion. As clearly stated in 18 U.S.C. § 3621(b), the BOP "may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the [BOP] . . . that the [BOP] determines to be appropriate and suitable." And while BOP Program Statement 5100.08 can help to guide that determination, it does not impose mandatory obligations, stating instead that "[e]ach inmate will be placed in a facility commensurate with their security and program needs through an objective and consistent system of classification which also allows staff to exercise their professional judgment," and permitting BOP staff to rely on a "management variable" to place inmates at institutions inconsistent with their security scores. Clearly, the "authority to order a prisoner's imprisonment in a particular place . . . is within the sole discretion of the BOP." *United States v. Bravata*, No. 22-1897, 2023 WL 6146991, at *2 (6th Cir. Sept. 20, 2023) (citing *Klawonn v. United States*, 11 F. App'x 559, 561 (6th Cir. 2001); *United States v. Williams*, 65 F.3d 301, 307 (2d Cir. 1995)). As a result, the Court has no trouble determining that this first step is satisfied. Discretion abounds in placement.

The Court will thus afford a "strong presumption" that the second step of the discretionary-function inquiry is likewise satisfied. *Jude*, 908 F.3d at 159; *see also Gaubert*, 111 S. Ct. at 1274. And indeed, inmate housing assignments are "theoretically susceptible to policy analysis." *Jude*, 908 F.3d at 159 (citing *A.O. Smith Corp.*, 774 F.3d at 370; *Myers*, 17 F.3d at 895). The United States correctly cites authority stating that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are

12

peculiarly within the province of the legislative and executive branches of government." *Turner v. Safley*, 107 S. Ct. 2254, 2259 (1987). Moreover, the Supreme Court has consistently recognized that prison authorities "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgement are needed to preserve internal order and discipline and to maintain institutional security." *See Bell v. Wolfish*, 99 S. Ct. 1861, 1878 (1979). In light of these precedents, the Court firmly concludes that inmate housing assignments are susceptible to the BOP's policy analysis, and the second step of the discretionary-function exception is met. As a result, Count II of the Amended Complaint should be dismissed with prejudice.

*ii. Release from Special Housing Unit (Count III)*

The United States next asserts that the discretionary-function exception applies to the BOP's decision to remove Brian Bennett from USP McCreary's special housing unit and place him into general population, and therefore, the Court should dismiss Count III of the Amended Complaint. *See* DE 37 ¶¶ 97–112, at 27–30. Once more, Plaintiffs have failed to clearly identify a statute, regulation, or program statement that the BOP failed to follow, which is alone grounds for dismissal. *See id.*; *see also Bannister*, 2025 WL 394949, at *7. The Court, however, will again take a charitable view and parse Plaintiffs' scattered array of cited authorities. *See* DE 37 ¶¶ 68–75, at 19–24.

But even then, the first step of the discretionary-function inquiry is satisfied because the BOP surely retains "an element of judgment or choice" with respect to in-facility transfers between administrative detention and general population. *Abbott*, 78 F.4th at 894 (quoting *Gaubert*, 111 S. Ct. at 1273–74). The BOP does have a mandatory overarching duty to "provide for the safekeeping care, and subsistence" of inmates and "for the[ir] protection," and assigning an inmate to a special housing unit is one way, situationally, to fulfill that duty. 18 U.S.C. § 4042(a). However, courts

13

have long recognized that this duty "is of a general nature" because BOP officials are "given no guidance [in the statute], and thus, have discretion, in deciding how to accomplish these objectives." *Montez ex rel. Est. of Hearlson v. United States*, 359 F.3d 392, 396 (6th Cir. 2004).

Although some sources, like Program Statement 5270.12 and 28 C.F.R. §§ 541.22(a), 541.23(c), 541.27, provide criteria for placing inmates in administrative detention (e.g., USP McCreary's special housing unit), they only state that inmates *may* be placed in administrative detention, even when addressing protection-based placements. This language indicates that the implementation of these provisions "is left to the discretion of BOP officials." *Montez*, 359 F.3d at 397. And while Plaintiffs use a portion of their response to argue that there are some yet unidentified mandatory duties that bind the BOP, they utterly fail to dispute the United States's argument regarding the non-existence of any binding duty violated by Brian Bennett's transfer out of USP McCreary's special housing unit. *See* DE 44 at 8–9. Put simply, it is not enough to tell the Court that *some* mandatory duty binds the BOP. That is, of course, the case. Rather, Plaintiffs must allege that the BOP was bound by and violated a *relevant* mandatory duty. They have not taken steps to do so. Accordingly, the Court, in reliance on the proper rubric and the referenced statutory sources, concludes that BOP staff retain discretion with regard to inmate transfers between administrative detention and general population.

For reasons already described above, inmate housing assignments are "theoretically susceptible to policy analysis." *Jude*, 908 F.3d at 159 (citing *A.O. Smith Corp.*, 774 F.3d at 370; *Myers*, 17 F.3d at 895). Thus, the second step of the discretionary-function inquiry is satisfied, and Count III of the Amended Complaint should be dismissed with prejudice.

*iii. Training and Supervision of BOP Staff (Count V)*

Finally, the United States contends that the discretionary-function exception applies to Plaintiffs' claim that the BOP failed to adequately train and supervise its employees on how to handle confidential personnel filings, and as such, Count V of the Amended Complaint should be dismissed with prejudice. *See* DE 37 ¶¶ 120–124, at 31–32. Here, only a perfunctory analysis is necessary. Plaintiffs have failed to allege, or reference anywhere in the Amended Complaint, that there exists a mandatory duty regarding the manner in which the BOP trains and supervises its staff. *See id.*; *see also Bannister*, 2025 WL 394949, at *7.

Additionally, the Sixth Circuit "has consistently held that agency supervisory . . . decisions fall within the discretionary[-]function exception." *Snyder*, 590 F. App'x at 509 (citing *O'Bryan v. Holy See*, 556 F.3d 361, 384 (6th Cir. 2009); *Carlyle v. United States*, 674 F.2d 554, 556–57 (6th Cir. 1982); *Zion v. United States*, 913 F. Supp. 2d 379, 388–89 (W.D. Ky. 2012)). In fact, *Snyder* involved a virtually identical situation, with the Sixth Circuit ultimately finding that "[b]ecause FBI hiring, supervision, training, and retention require policy judgments—the type that Congress intended to shield from tort liability—and because Plaintiff failed to allege the United States'[s] nonconformance with any applicable regulations, . . . the district court lacked subject[-]matter jurisdiction." *Id.* at 510. The present matter is not meaningfully distinct from *Snyder*. The BOP clearly retains "an element of judgment or choice" with respect to how it trains and supervises its staff, *Abbott*, 78 F.4th at 894 (quoting *Gaubert*, 111 S. Ct. at 1273–74), and those judgments and choices are clearly "susceptible to policy analysis," *Jude*, 908 F.3d at 159 (citing *A.O. Smith Corp.*, 774 F.3d at 370; *Myers*, 17 F.3d at 895). As a result, both steps of the discretionary-function inquiry are met. The Court simply may not entertain such a claim.

15

In light of this conclusion, the Court declines to consider the United States's separate argument that Plaintiffs have failed to properly exhaust their administrative remedies by not raising their Count V claims before the BOP prior to initiating this lawsuit.[2]

## 2. Lack of Valid Loss of Consortium Claim (Count IV)

Plaintiffs are barred from recovering on their loss of consortium claims, *see* DE 37 ¶¶ 113–119, at 30–31, and as a result, Count IV of the Amended Complaint should be dismissed under Rule 12(b)(6). Because the underlying merits of FTCA claims are governed by state substantive law, Kentucky law dictates the scope of the United States's liability.[3]

However, Kentucky law does not permit parents to recover for loss of consortium regarding their adult children. *See, e.g.*, *Pauly v. Chang*, 498 S.W.3d 394, 414 (Ky. Ct. App. 2015) ("Kentucky statutes do not recognize a parent's claim for loss of consortium with their adult children." (quoting *Smith v. Vilvarajah*, 57 S.W.3d 839, 842 (Ky. Ct. App. 2000))). Nor does it permit adult children to recover for loss of parental consortium. *See, e.g.*, *Clements v. Moore*, 55 S.W.3d 838, 840 (Ky. Ct. App. 2000) ("We are not insensitive to the losses experienced by the appellants, losses which are substantially the same as those experienced by their minor sibling. . . . Nevertheless, it is the belief of this Court that it is not the proper function of the judiciary to further

---

[2] And given "that an administrative claim need not articulate a precise cause of action in order to satisfy the presentment requirement," *Abbott*, 78 F.4th at 897 (citing *Khan v. United States*, 808 F.3d 1169, 1172 (7th Cir. 2015)), and that nothing more than a "written notification of [the] incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death" was needed to satisfy Plaintiffs' obligations, *Blakely v. United States*, 276 F.3d 853, 864 (6th Cir. 2002*)* (quoting *Lundstrum v. Lyng*, 954 F.2d 1142, 1145 (6th Cir. 1991) (per curiam)), the Court has serious doubts that the United States would prevail on this argument anyway.

[3] While not in dispute, it is worth stating for completeness why Kentucky law is the applicable substantive law in this action. Through the FTCA, the United States can be held liable in tort "if a private person[] would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 2672. Given that all of the purportedly culpable conduct in this case occurred in Kentucky, the United States is only liable to the extent that Kentucky law permits. *See generally* DE 37. There were some actions in other locations, but the placement in Kentucky and the SHU transfer happened at USP McCreary, and obviously Mr. Bennett suffered the fatal attack (the consortium loss predicate) here.

develop the common law in the area of loss of consortium claims . . . ."). As such, neither Wanda Ellen Bennett nor Michael Keith Bennett may recover for loss of consortium, and Count IV of the Amended Complaint should be dismissed with prejudice.

### IV. CONCLUSION

For the above-stated reasons, the Court GRANTS DE 41, in part. The Court DISMISSES Count II, Count III, Count IV, and Count V of the Amended Complaint, *see* DE 37, with prejudice. Plaintiffs may, however, proceed with the claims contained in Count I of the Amended Complaint.

This the 23rd day of January, 2026.



Signed By:
*Robert E. Wier*
United States District Judge